JINA L. CHOI (NY State Bar No. 2699718)
  choij@sec.gov
JOHN S. YUN (State Bar No. 112260)
  yunj@sec.gov
STEVEN D. BUCHHOLZ (State Bar No. 202638)
  buchholzs@sec.gov
ELENA RO (State Bar No. 197308)
  roe@sec.gov
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

JOSEPH G. SANSONE (NY State Bar No. 4043659)
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281
Telephone: (212) 336-1100

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV-15- |
| Plaintiff, | |
| v. | COMPLAINT |
| JAMES ALAN CRAIG, | |
| Defendant. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**SUMMARY OF THE ACTION**

1. This action concerns the use of social media – "tweets" from Twitter accounts – to commit securities fraud by making false statements about publicly traded companies in order to manipulate the price of these companies' exchange-traded securities. On January 29, 2013, Defendant James Alan Craig ("Craig") sent out phony tweets regarding Audience, Inc. ("Audience"),

a public technology company, from a Twitter account designed by him to resemble the account of a securities research firm called Muddy Waters Research ("Muddy Waters"). The tweets falsely stated that the Department of Justice was investigating Audience. This Twitter account issued eight phony Muddy Waters tweets over a span of ninety minutes, causing trading activity in Audience stock to increase and the company's share price to fall sharply. Audience's share price dropped approximately 28%, prompting the Nasdaq exchange to temporarily halt trading of Audience stock.

2. The next day on January 30, 2013, Craig sent out phony tweets regarding Sarepta Therapeutics, Inc. ("Sarepta"), a public biopharmaceutical company, from a second Twitter account designed to resemble that of Citron Research, another securities research firm. The tweets falsely stated that the Food and Drug Administration had seized the company's drug trial papers and that certain trial results were tainted. Again, as a result, the volume of trading in Sarepta stock spiked and the company's share price dropped to a low 16% below where it had traded just before the false tweets.

3. In an attempt to capitalize on the downward stock price movement he caused, Craig bought and sold Audience shares on January 29 and Sarepta shares on January 30. On each occasion, Craig bought the securities approximately ten minutes after the companies' stock prices started falling in response to the phony tweets. Craig's trading in connection with these two market manipulations demonstrates that he attempted to manipulate the equity price of these two issuers by issuing fraudulent tweets about the companies so that he could profit personally. He waited too long each time to trade the stock and therefore only profited approximately $100 collectively from his manipulations. Craig's conduct, however, caused harm to the U.S. markets and investors by triggering significant stock price drops, which undermine investor confidence.

4. By his knowing or reckless use of phony tweets to manipulate stock prices of publicly traded securities, Craig violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action pursuant to Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa]. Defendant has, directly or indirectly, made use of the

means and instrumentalities of interstate commerce and of the mails in connection with the acts, transactions, practices and courses of business alleged in this Complaint.

6.  Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The acts and transactions constituting the violations alleged herein, including the posting of the false tweets from accounts at Twitter, Inc. (a San Francisco, California company), occurred in the Northern District of California.

7.  Intradistrict assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2 because certain of the transactions (including the posting of false tweets from accounts at Twitter), acts, practices and courses of business alleged herein occurred in San Francisco County, California.

## DEFENDANT

8.  Craig, age 62, resides in Dumfries & Galloway, Scotland. Craig created two Twitter accounts, @Mudd1waters and @Citreonresearc, to resemble the accounts of established securities research firms Muddy Waters and Citron Research. Craig is an active trader of equities and options and typically comments on stocks through various other Twitter handles he created, including @dunragit and @HedgeyeAC.

## FACTUAL ALLEGATIONS

**A.  Craig Created The False and Misleading Twitter Accounts**

9.  On January 25, 2013, Craig created a Twitter account with the handle @Mudd1waters. He designed this Twitter page to mislead the public into believing that tweets issued from this account were those of established equity research firm Muddy Waters. He purposely made the Twitter handle resemble that of Muddy Waters's legitimate Twitter account: @muddywatersre. In addition, the fake Twitter page he created used the already existing logo of Muddy Waters, and referenced "Conrad Block," which is similar to the name of Muddy Waters's founder Carson Block.

10. On January 29, 2013, Craig created the @Citreonresearc Twitter account. He designed the Twitter page to again dupe the public by mimicking the existing securities research firm Citron Research's Twitter page. He also intentionally made the Twitter handle resemble that of

Citron Research's real Twitter account: @CitronResearch.  In addition to creating a very similar Twitter page and handle, Craig used Citron Research's logo on the fake Twitter page, and provided a link to Citron Research's website.

### B.     Craig Issued False Tweets To Manipulate The Market

11.     On January 29, 2013, at 11:44 a.m. (EST), Craig, using the fake Muddy Waters Twitter account, began falsely tweeting about Audience:  "AUDIENCE the noise suppression company being investigated by DOJ on rumoured fraud charges Full reort [sic] to follow[.]"  By 1:09 p.m. that day, Craig had issued eight false tweets:  the original tweet that Audience was being investigated by the Justice Department, six re-tweets of the original message, and another tweet reporting that Audience's annual report was being held back.  An image of Craig's @Mudd1waters Twitter page, as it appeared on January 29, is attached to this Complaint as Exhibit 1.

12.     At approximately 2:19 p.m., trading activity in Audience's stock began increasing and the share price began to fall sharply.  The volume of shares traded on January 29 (over 840,000 shares) was in excess of ten times the volume of shares traded the previous day (approximately 77,900 shares).  Beginning at the time of the first tweet, Audience's share price fell from $12.35 per share, to reach a low of $8.87 per share, an approximately 28% drop.  At 2:22 p.m., the price drop triggered Nasdaq's single stock circuit breaker and trading of Audience shares was halted.  That same day, Craig bought $3,549.00 worth of Audience stock, but failed to catch the stock's intraday low price.  He later sold these shares for a profit of approximately $9.00.

13.     The tweets by Craig were complete fabrications.  At 2:30 p.m. that day, the actual Muddy Waters tweeted that there was no Muddy Waters report being released by them regarding Audience, and that Craig's tweets were "a hoax."  By 2:38 p.m., the price of Audience's stock recovered and traded at an average price of $12.28 per share.

14.     On January 30, 2013 at 11:15 a.m., Craig, using the fake Citron Research account, began falsely tweeting about Sarepta: "$SRPT FDA steps in as its 48 weeks results on Etelplisen [sic] results are tainted and have been doctored they believe Trial papers seized by FDA."  Craig sent out at least two false tweets with the same statement.  An image of Craig's @Citreonresearc Twitter page, as it appeared on January 30, is attached to this Complaint as Exhibit 2.

15. At approximately 11:18 a.m., the volume of trading in Sarepta shares began to climb and the company's share price began to drop. From an intraday high of $29.30 just minutes before, Sarepta shares reached a low of $24.50, representing a drop of approximately 16%. By 11:23 am, the price of Sarepta stock had recovered, trading at an average price of $28.32 per share. Again, that same day, Craig bought Sarepta shares totaling $19,537, but failed to catch the intraday low price for the stock. He later sold these shares and made a profit of approximately $88.00.

16. Craig's tweets about Sarepta were false. Citron Research did not send out the tweets about Sarepta. At approximately 5:30 p.m. on January 30, Sarepta issued a statement noting that the company "may be subject to market rumors through social media and other anonymous sources," and that it does not comment on market rumors. It went on to remind investors that "Sarepta communicates material information in accordance with [its] obligations as a public company" and that it was looking forward to its meeting with the FDA to address the path forward for its drug Eteplirsen.

C. **Craig Discussed The False Tweets and Sent Additional False Tweets**

17. Craig often used the Twitter handles @dunragit and @HedgeyeAC to comment on publicly traded companies, including Sarepta. On January 30 and 31, 2013, Craig's @HedgeyeAC handle exchanged tweets with another Twitter account discussing the false Audience and Sarepta tweets. The other Twitter handle commented that the SEC needed to arrest someone for the fraudulent Audience and Sarepta tweets. Craig tweeted back "what could you arrest them for??" The other Twitter handle tweeted back, "@dunragit are you serious? did you read my post? it's called securities fraud." Craig replied back implying that the people responsible for the false tweets would be difficult to find because they did not use their own names on Twitter, and that one would have to profit to be held liable for securities fraud connected to the false tweets.

18. On July 9, 2013 at 11:28 a.m., Craig tweeted again from the Twitter account @Mudd1waters. He issued three false tweets about the public biotechnology company Intuitive Surgical, Inc., stating: "SEC and Dept of Justice to investigate $ISRG (Intuitive Surgical Inc) on robotic safety and alleged mis-conduct." There was no market reaction to Craig's Intuitive Surgical tweets, and so Craig did not trade soon thereafter.

**D.    Craig Harmed U.S. Securities Markets**

19. Craig's false tweets and manipulative conduct caused substantial market disruption and loss, and caused Nasdaq to halt trading in a security. In reaction to Craig's false and misleading tweets and the subsequent drop in price, certain Audience and Sarepta investors sold hundreds of thousands of shares during each of the temporary stock price depressions and sustained estimated losses of approximately $1.5 million total. In addition, Craig's tweets caused a public company and two established research firms to expend resources and respond to the tweets.

20. Craig's fraudulent conduct also caused tremendous intangible harm to the U.S. markets as the unwarranted and substantial stock price drops he brought about undermine investors' confidence.

## CAUSE OF ACTION

Violations of Section 10(b) of the Exchange Act and Rule 10b-5
[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

21. Paragraphs 1 through 20 are re-alleged and incorporated herein by reference.

22. Defendant has, by engaging in the conduct set forth above, directly or indirectly, by use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons, in connection with the purchase or sale of securities.

23. By reason of the foregoing, Defendant, directly or indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5], and unless enjoined will continue to violate Section 10(b) of the Exchange Act and Rule 10b-5.

SEC v. JAMES ALAN CRAIG
COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

**I.**

Enjoin Defendant from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5].

**II.**

Order Defendant to pay civil money penalties pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)].

**III.**

Order Defendant to disgorge his ill-gotten gains according to proof, plus prejudgment interest thereon.

**IV.**

Grant such other relief as this Court may deem just and appropriate.

Respectfully submitted,

Dated: November 5, 2015         /s/ Elena Ro
                                Elena Ro
                                Attorneys for Plaintiff
                                SECURITIES AND EXCHANGE COMMISSION